ZAJICEK et al, Respondents, v. CITY OF WESSINGTON, Appellant.

(220 N. W. 913.)

(File No. 6076. Opinion filed July 28, 1928.)

*Gardner & Churchill* and *George E. Longstaff,* all of Huron, for Appellant.

*S. V. Ghrist,* of Miller, for Respondents.

MISER, C. This proceeding is brought by plaintiffs and respondents to exclude approximately 134 acres of agricultural land from the municipal limits of the city of Wessington. This city includes 698 acres, being all of section 6 and 58 acres adjoining. Of this area, 162 acres are platted. Plaintiff, Zajicek owns the entire southeast quarter of said section, but in his petition for exclusion seeks to exclude only 134 acres, leaving a rectangle of 60x70 rods or that approximately 26 acres of his land which lies nearest to the platted part of the town site within the city. Other unplatted land lies between this rectangle and the platted part of the town site. The farm buildings on the quarter section lie within the portion asked to be excluded, but only 10 rods from the rectangle left in, and are not less than 110 rods from the nearest sidewalk, fire hydrant, sewer main, and water main, which stop at the built-up part of the city. The sewer and water systems were installed by the issuance of bonds in the sum of $42,000, which are being paid by general taxation; and consequently petitioner's farm, which he seeks to have excluded, pays in proportion to the value the same as though located abutting the sewer and water main. In 1924, plaintiff's taxes on the quarter section were $417.08, of which $230.52 was for city purposes; and this was the lowest tax in six years. The school taxes are not included in the $230.52 city tax; and, inasmuch as the school district as laid out includes petitioner's land whether excluded from or left within the city, the matter of school taxes is immaterial. Despite the fact that this land is being used for the only purpose for which there is any demand for it—that is, for a farm—and is fenced and actually tilled as a farm, during only two of the ten years that the petitioner has owned it has it produced enough income to pay his taxes.

In 1910, Wessington had a population of 576; in 1915, 526; in 1920, 728; and in 1925, 717. This city is situated in a strictly agricultural district, is not a county seat, has no manufacturing interests nor any institution giving employment to any considerable number of persons, but is the grain and stock shipping center of its community, with business and recreational facilities manifesting

a considerable civic enterprise. It had increased in population only 152 persons from 1910 to 1920; and the state census in 1925, after the town had been established 40 years, gives a population of 717.

In 1917, the plaintiffs in this case, together with the wife of plaintiff Zajicek, instituted a proceeding for the exclusion of plaintiff's entire quarter section, which petition was rejected by the circuit court upon findings and conclusions of law duly made, which appellants in this case contend are res adjudicata on the question of right to exclude.

With this latter contention we cannot agree; for the land sought to be excluded is not the same, and, furthermore, a court might see many reasons for either exclusion or inclusion after a lapse of seven years, depending upon whether a city has kept its promise of growth and development or failed so to do.

The real question, therefore, is whether, from the facts proved as aforesaid, the petition for exclusion should be granted or rejected. The trial court held that the land receives no benefit from being in the city; that the total burden of taxation is so great as to entirely confiscate the earnings of the land; that the city has no use for this land and is not benefited by its being included in the corporation, except that it is a source of revenue to the town; and that it may be excluded without injustice to the inhabitants of Wessington and the persons interested.

The statutory provisions with reference to the exclusion of territory from the corporate limits of a municipal corporation are embraced within sections 6555, 6556, 6557 and 6558 of the Revised Code 1919. The statute itself contains no rule to guide the governing body of a municipality in acting upon the petition for exclusion, but section 6558 contains the following rule for the guidance of the circuit court in case of presentation of petition to it: This section is as follows:

"If upon the hearing the court shall find that the request of the petitioners ought to be granted and can be granted without injustice to the inhabitants or persons interested, the court shall so order.

This is almost identical in wording and is identical in meaning with section 1118 of the Compiled Laws of 1887; and this was carried into the Rev. Code of 1903 (section 1512) without change. The Legislature has not further modified nor explained the rule

for the guidance of the trial court, but this court has repeatedly passed upon the question of exclusion. The earliest case was Pelletier v. City of Ashton, 12 S. D. 366, 81 N. W. 735. Since that time, the court has decided Weiland v. Ashton, 17 S. D. 621, 98 N. W. 87; Coughran v. Huron, 17 S. D. 271, 96 N. W. 92; Qualey v. Brookings, 18 S. D. 581, 101 N. W. 713; Wickhem v. Alexandria, 23 S. D. 556, 122 N. W. 597; Oehler v. Big Stone City, 16 S. D. 86, 91 N. W. 450; Heineman v. Alexandria, 32 S. D. 365, 143 N. W. 291; Mack v. Costello, 32 S. D. 511, 143 N. W. 950, Ann. Cas. 1916A, 384; Cole v. Watertown, 34 S. D. 69, 147 N. W. 91; Johnson v. Castlewood, 40 S. D. 493, 168 N. W. 124; Thiel v. Alexandria, 41 S. D. 427, 171 N. W. 209; Kreger v. Clear Lake, 46 S. D. 614, 195 N. W. 498; Lockhart v. Clear Lake, 46 S. D. 618, 195 N. W. 500; Klosterman v. Elkton, 46 S. D. 136, 191 N. W. 341; LaCome v. Dolton, 48 S. D. 122, 202 N. W. 389; Smart v. City of Wessington Springs, 47 S. D. 486, 199 N. W. 468. At the present term, this court has handed down opinions in Betts v. City of Alexandria, 53 S. D.240, 220 N. W. 494; De Neui v. City of Avon, 53 S. D.312, 220 N. W. 917; and Klosterman v. City of Elkton, 53 S. D. 324, 220 N. W. 910.

Considering only such of the foregoing cases, decided prior to the present term, as were decided upon the facts, we find that Pelletier v. Ashton, supra, resulted in a judgment of exclusion by the circuit court, which was affirmed by the Supreme Court, the court saying that:

"The facts and circumstances of the case forcibly exemplify the wisdom of the Legislature in providing an avenue of escape for the citizen burdened without recompense by the retention of his land within city limits for revenue only."

In Qualey v. Brookings, supra, the trial court also excluded the territory, but its judgment was reversed by this court. This was an effort to exclude approximately two-thirds of the area within the city limits; and the court called attention to the fact that the Agricultural College was located in the city, and the corporate limits of the school district were the same as the limits of the city, and that, in their system of waterworks, the supply for the same is within the territory sought to be excluded and that the outlet to the sewerage system was also within the territory sought to be excluded.

In Johnson v. Castlewood, supra, the trial court denied the petition for exclusion; but, upon appeal, the lower court was reversed, this court saying:

"No reason of any kind appears why the granting of the petition should be objected to by the defendant, except that, so long as the premises involved remain within the corporate limits of the town, said premises may be made a source of revenue to the town," —a statement that seems fully justified by the facts. In the town of Castlewood they had an electric light plant, street lights within 100 rods of the premises sought to be excluded, a fire department, a public library, and a railway depot within a half mile of the tract sought to be excluded. Yet the court held that, inasmuch as the population of 537 could quite properly be accommodated on the 200 acres of platted area, no good reason existed for retaining petitioner's 320 acres.

In Thiel v. Alexandria, supra, the trial court denied the petition for exclusion, but upon appeal it was reversed. In that case there was a population of 936, a total acreage within the city limits of 1,360 acres, of which 160 acres was sought to be excluded, a bonded indebtedness in excess of $20,000. Except for the fact that in the case of Thiel v. Alexandria the trial court denied the petition for exclusion, that is perhaps more nearly like the case at bar than any case of exclusion heretofore presented to this court; for both have a bonded debt, the town of Alexandria had no sidewalks, water mains, gas mains, electric light lines, street lights or lamps nearer than 2½ blocks from the nearest corner of appellant's land, and it was 1,995 feet from the corner to the nearest water hydrant; whereas in the case at bar, the water main does not come within 105 rods of the nearest point of plaintiff's land sought to be excluded, and the same is true of sidewalk and sewer. The school district of which Alexandria is a part embraces territory surrounding it upon all sides, as does the school district of which Wessington is a part.

In Klosterman v. Elkton, 46 S. D. 136, 191 N. W. 341, the petition for exclusion was granted by the circuit court, but upon appeal was reversed. That opinion states that the public school building was only three blocks away from the corner of respondent's land sought to be excluded and four blocks from his residence; the residence of respondent was only three-fourths of a

mile from the center of the plaintiff's business district; the tendency of growth was toward petitioner's land; and the plans of the city engineer contemplated a sewer system discharging in that direction; and, as the court said, that case shows facts more favorable to the retention of the land within the city limits than did Thiel v. City of Alexandria, supra. See, however, the opinion of this court on the second exclusion proceeding of Klosterman v. City of Elkton, decided at this term, for the trial court's findings on the facts.

The next two cases, Kreger v. Clear Lake and Lockhart v. Clear Lake, involve substantially the same facts in each case. The trial court granted the petition for exclusion, and upon appeal it was reversed by this court.

In those cases, the city of Clear Lake had a bonded indebtedness of between $35,000 and $40,000. It was a county seat town; the courthouse, costing $135,000, was located within 5 blocks of the land sought to be excluded. The sidewalk was within 650 feet of the land. It had a water, sewer, and electric light system; and plaintiff's residence was connected with and had the benefit of each of them. The city streets ran along the boundary of the land. The petitioner Kreger lived within 5 blocks of the city library and the city hall, paid for and maintained by taxes upon the citizens, and, furthermore, the majority of the debts contracted by the city were contracted while the plaintiff was a resident of the city, and while much of the said bonded debt was being contracted, petitioner Kreger was a member of the city council, and, during a portion of that time, petitioner Lockhart, in the companion case, was the mayor of the city.

The next case is Smart v. City of Wessington Springs, supra, in which case a petition for exclusion was denied by the trial court and the judgment affirmed by this court; the court saying, among other things, that the city has been and will be put to great expense to care for the flood water which flows from the land sought to be excluded, and will probably be compelled to establish a draining system over these lands, that the land adjacent thereto in the east are all platted, and that the city has made extensive improvements in extending sewer and water mains approximately the entire length of the land.

Finally, in LaCome v. Dolton, supra, the trial court rendered

judgment favorable to exclusion, but on appeal was reversed. The facts disclosed that the proposed limits of the city would be extremely irregular in outline; and, for this and other reasons, this court found that the evidence was insufficient to sustain the judgment of exclusion.

From the foregoing, it would appear that, if the land sought to be excluded is reasonably needed for residential territory and likely to be used for that purpose in the near future, and if it is important that it be retained for sanitary purposes or for the purpose of policing the same, if there be already residing upon it a considerable number of persons in close proximity to the main business or residential section, if schools, water mains, streets and sidewalks have been located with a special view to serving the territory sought to be excluded, if the proposed limits of the city would be extremely irregular, if the residents on the land are not primarily engaged in agriculture but engaged in business in the city, and have the use of water mains, sewer, electric light, and sidewalks easily accessible, or if several of the foregoing conditions co-exist, or if there be other facts which show that exclusion would work injustice to the inhabitants of the municipality, there is cause for denying the petition for exclusion.

On the other hand, if the character of the land and the only prospective use therefor is purely agricultural, and it is used for that purpose only, and the only reason that the municipality can assign for desiring to retain the same is to derive an income therefrom by way of taxation, the land should be relieved of that burden, and the petition ought to be granted. Justice to neither inhabitants of the municipality nor the persons interested in the land requires that purely agricultural land, which, if freed from city taxes, may produce some net income through corn or alfalfa, should be kept within the city limits to produce nothing but delinquent taxes, tumbleweeds, and expense to taxing authorities.

Tested by the light of these ten previous decisions, it is no injustice to the inhabitants of the city of Wessington to exclude this territory; and the trial court was clearly justified in its findings, conclusions, and judgment and in its denial of motion for new trial. For a further statement of rules governing exclusion, see Klosterman v. City of Elkton, decided at this term.

But should this territory, which clearly seems to be retained within the city for revenue purposes only, to the serious detriment of its owner and without any benefit to the city, aside from revenue, be permitted to withdraw and free itself from all municipal debts theretofore incurred? At the time of the trial, there were outstanding sewer bonds of $12,000, with $4,800 accumulated in its sinking fund, $30,000 of water bonds with $6,000 accumulated in its sinking fund, and $28,000 municipal building bonds with $3,500 in its sinking fund. As to the benefit to the petitioner from the water and sewer systems with their nearest mains a hundred rods distant from the nearest point of his land, such benefits or any possible benefit that may come to him has doubtless already been fully paid for in the taxes which have accumulated the sinking fund of $10,800. A different situation exists with reference to the municipal building and the $28,000 of bonds outstanding therefor. This building is evidently a community hall furnishing a civic meeting place as well as gymnasium for school children and many other useful community benefits. While, if petitioner's land be excluded, this building will remain within the city and be part of its assets, nevertheless petitioner and his tenants will have access to the same and enjoyment of the same as though citizens of the city. If the law permitted, this might afford a proper exercise of apportionment of the debt, the statutes of some states permitting that excluded territory be decreed to continue to bear until paid their former proportion of the burden of such debts; but this is a purely legislative function, and our Legislature has not seen fit as yet to make such provision. On this see Mc-Quillan on Mun. Corp. § 294, Johnson v. City of San Diego, 109 Cal. 468, 42 P. 249, 30 L. R. A. 178. This court has repeatedly permitted the exclusion of territory when bonds were outstanding. This was true in the Pelletier Case, supra, wherein this court first passed upon this law. In an Oklahoma case, In re Yeargain, 43 Okl. 593, 143 P. 844, that court, in applying the identical law contained in our sections heretofore quoted, and after citing Pelletier v. Ashton and Wickhem v. Alexandria, supra, said that the fact that the town had a bonded indebtedness of $35,000 incurred while the territory was part of the city, was not sufficient to justify a denial of the petition for exclusion of purely agricultural land.

We therefore conclude that, while the Legislature might wisely

provide for an apportionment of debt upon the exclusion of territory from a municipality or provide for the payment of its distributive share, as condition of exclusion, the Legislature has not yet seen fit so to do; and the overwhelming weight of authority is that the existence of a bonded indebtedness is not sufficient justification for denial of exclusion where otherwise entitled thereto.

The judgment and order appealed from are affirmed.

BURCH, P. J., and POLLEY, CAMPBELL, and BROWN, JJ., concur.

SHERWOOD, J., dissents.